IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:13-CV-104-D

| | | |
|---|---|---|
| BILLY R. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PITT COUNTY SCHOOL BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

Billy R. Walls ("Walls" or "plaintiff") is an African-American teacher. Walls (who proceeds pro se) claims that the Pitt County School Board of Education ("Board" or "defendant") disciplined him because of his race and in retaliation for complaining about race discrimination, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. On February 27, 2015, the Board moved for summary judgment [D.E. 39] and filed supporting exhibits [D.E. 40] and a memorandum in support [D.E. 41]. On April 13, 2015, Walls responded in opposition [D.E. 48]. On April 30, 2015, the Board replied [D.E. 49]. As explained below, the court grants the Board's motion for summary judgment.

I.

Walls began working for the Pitt County Schools in 1989 as a bus driver coordinator. Thereafter, he received a teaching license and began working as a teacher. In 1995, Wall was transferred to the position of lead teacher at the Transition Center (an alternative school for students in grades 6–12 with disciplinary issues). See Walls Dep. [D.E. 40-1–40-4] 19–22.[1] As lead teacher

---

[1] Walls's deposition was divided and filed in five separate docket entries. See [D.E. 40-1, 40-2, 40-3, 40-4, 40-5]. As such, all future citations will be to "Walls Dep." and the corresponding deposition page.

at the Transition Center, Walls not only taught and supervised students, but also had some administrative duties. Id. 24–25, 28–32. A second teacher at the Transition Center, Stella Dunn, taught and supervised middle school students. See id. 34. Walls did not have an administrator's license; therefore, Walls's supervisor, the Director of Student Services, was the Transition Center's administrator. See id. 27, 31, 37.

In August 2011, Dr. Noland became the Transition Center's Director of Student Services. See Noland Aff. [D.E. 40-9] ¶¶ 2–3; cf. Walls Dep. 59. The Board asked Dr. Noland to create Pitt Academy, which would be a true alternate school for long-term suspended students. See Noland Aff. ¶¶ 6–8. The Transition Center, in turn, would serve students coming from juvenile facilities or group homes. See id. ¶ 7. On October 3, 2011, the Board approved Pitt Academy, and implementation began on October 14, 2011. See Lutz Aff. [D.E. 40-10] ¶ 4; Noland Aff. ¶ 8 & Ex. C. [D.E. 40-9] 41. Due to the reduced number of students in the Transition Center, the Board transferred Stella Dunn to Pitt Academy on October 6, 2011, and did not fill her position. See Noland Aff. ¶ 7.

On October 4, 2011, a male and female student were found together in a girls' restroom at the Transition Center. Walls investigated the incident and reported it to Dr. Noland's administrative assistant. See Walls Dep. 76–77. Walls did not report the incident to Dr. Noland directly or to the school principal of the female's base school. See id. 78.

Dr. Noland did not learn about the October 4 incident until October 17, 2011. See Noland Aff. ¶¶ 9–10. When Dr. Noland learned about the incident, Dr. Noland e-mailed Walls to express her concerns. See Walls Dep. Ex. 2. On October 26, 2011, Dr. Noland met with Walls to discuss her concerns and expectations. See Noland Aff. ¶ 11; Walls Dep. 101–08. After the meeting, Dr. Noland wrote Walls a letter. See Noland Aff. ¶ 11 & Ex. D. Dr. Noland expressed concern to Walls about his failure to document disciplinary issues at the Transition Center, his failure to promptly report incidents to Dr. Noland and to students' base school principals, and his inadequate investigation of the October 4 incident (particularly given the male student's history of inappropriate

2

sexual behavior). See Noland Aff. ¶¶ 10–11 & Ex. D.

On November 7, 2011, Walls responded to Dr. Noland's letter. See Walls Dep. Ex. 2. At the end of Walls's letter he wrote: "From my professional perspective, the manner in which you have handled this matter, the tone of your letters dated October 26, 2011 and November 3, 2011 and personal contacts that I have had with you leads me to believe that you may have personal or discriminatory bias towards me." Id. Walls did not view this comment to be a grievance, but an "informal concern" or "informal comment." Walls Dep. 108–09, 124–25. Walls did not file a grievance against Dr. Noland alleging race discrimination or anything else. See Walls Dep. 98, 108–09; Noland Aff. ¶ 14; Emory Aff. [D.E. 40-11] ¶ 17.

Due to the October 4 incident, Dr. Emory, the then Superintendent of Pitt County Schools, imposed a long-term suspension on the male student. See Emory Aff. ¶¶ 2, 5. The male student appealed to the Board, and the Board held a hearing on November 15, 2011. See Noland Aff. ¶ 12. At the boy's mother's request, Walls testified at the hearing. See Walls Dep. 87–90. After deliberating, the Board overturned the boy's long-term suspension. See Emory Aff. ¶ 5. Nonetheless, after the Board hearing, some Board members expressed concern about the lack of student supervision at the Transition Center. See id.

On November 17, 2011, Dr. Emory asked Walls to provide a statement explaining the lack of supervision of the male and female students on October 4, 2011. See id. ¶ 6 & Ex. A; Walls Dep. Ex. 6. In response, Walls stated that he "was providing supervision for both" middle and high school students on October 4, 2011. Walls Dep. 149 & Ex. 6. Dr. Emory then asked Dr. Delilah Jackson (Assistant Superintendent of Human Resources) to investigate Walls's role in the October 4 incident. See Emory Aff. ¶ 7; Jackson Dep. [D.E. 40-6–40-8] 75.[2]

---

[2] Dr. Jackson's deposition was divided and filed in three separate docket entries. See [D.E. 40-6, 40-7, 40-8]. As such, all future citations will be to "Jackson Dep." and the corresponding deposition page.

3

On November 23, 2011, consistent with N.C. Gen. Stat. § 115C-325(f1), the Board suspended Walls with pay and benefits pending further investigation of the October 4 incident. See Jackson Dep. 76–77 & Ex. 15; Emory Aff. ¶ 8. Dr. Jackson then thoroughly investigated the incident. See Jackson Dep. 79–84. Dr. Jackson concluded that the male student's "person centered plan" indicating that he had prior inappropriate sexual contact with children should have compelled Walls to ensure that the male student was supervised at all times. See id. 84.

After Dr. Jackson's investigation, Dr. Emory decided to recommend to the Board that it terminate Walls's employment based on neglect of duty. See Emory Aff. ¶ 8; Jackson Dep. 18. On January 13, 2012, Dr. Emory informed Walls of her "intent to recommend [his] dismissal" and notified him of his rights under N.C. Gen. Stat. § 115C-325(h)(2). [D.E. 25-2]. Specifically, Dr. Emory noted that Walls's "handling of and lack of supervision with a high risk student at the Transition Center have created serious concerns about [his] judg[]ment." Id. 1.

Walls requested a hearing to challenge Dr. Emory's dismissal recommendation. Emory Aff. ¶ 9. On February 20, 2012, the Board held Walls's dismissal hearing. At the hearing, Walls asked the Board not to dismiss him, but let him stay in a teaching position somewhere in the Pitt County Schools. See Emory Aff. ¶ 9; Dismissal Hr'g Tr. [D.E. 40-13–40-14] 48.[3] Walls's advocate at the hearing encouraged the Board to consider that Walls had only thirteen months until he could retire and urged a transfer to a different teaching position rather than termination. See Dismissal Hr'g Tr. 46, 48–49.

The Board rejected Dr. Emory's dismissal recommendation. See Emory Aff. ¶ 9; Walls Dep. Ex. 10. Although Board Chairman Bishop Ralph Love, an African American male, believed that sufficient evidence existed to terminate Walls, Love wanted Walls to be able to continue to work and

---

[3] The dismissal hearing transcript was divided and filed in two separate docket entries. See [D.E. 40-13–40-14]. As such, all future citations will be to "Dismissal Hr'g Tr." and the corresponding transcript page.

4

then retire. See Love Aff. [D.E. 40-12] ¶¶ 2–4; Emory Aff. ¶ 10. Thus, the Board told Dr. Emory to transfer Walls to a position outside the Transition Center. See Love Aff. ¶ 4.

Effective February 22, 2012, Walls returned from his suspension with pay and benefits. By this date, the lead teacher position at the Transition Center had been eliminated due to Pitt Academy and the restructuring of duties at the Transition Center. See Lutz Aff. ¶ 6; Emory Aff. ¶ 14; Noland Aff. ¶ 7. Dr. Emory assigned Walls to a position as a CTE (career and technical education) teacher at Hope Middle School for the remainder of the 2011–12 school year. See Emory Aff. ¶¶ 11–12 & Ex. B; Jackson Dep. Ex. 19. The Hope Middle School position was the only position in the Pitt County Schools that allowed Walls to teach consistent with his teaching certification in CTE and Vocational Instruction. See Emory Aff. ¶ 11; Walls Dep. 13–14; Jackson Dep. 71. Dr. Emory also hoped that Walls's Hope Middle School assignment would provide Walls a fresh start. See Emory Aff. ¶¶ 11, 19. On March 5, 2012, the Board approved Walls's transfer. See Jackson Dep. 85–87 & Ex. 21 [D.E. 40-8] 37.

Walls did not lose any pay or benefits due to his suspension or his transfer to Hope Middle School. See Walls Dep. 43–44; Jackson Dep. 93; Emory Aff. ¶ 19. Moreover, the Board gave Walls additional support concerning his transition to Hope Middle School. See Emory Aff. ¶ 13; Jackson Dep. 44; Walls Dep. 53–54.

On May 11, 2012, Walls filed a grievance and alleged that his transfer to Hope Middle School was retaliatory. See Walls Dep. 155, 161; Emory Aff. ¶ 14. Dr. Emory met with Walls concerning the grievance and then responded in writing and denied any retaliation. See Emory Aff. ¶¶ 14–15 & Ex. D. Walls then appealed to the Board. See Emory Aff. ¶¶ 15–16; Walls Dep. 161.

On July 11, 2012, the Board held a grievance hearing. See Emory Aff. ¶ 16; [D.E. 20-11]. The Board upheld the transfer, and the Board (including Chairman Love) concluded that the transfer was proper and non-retaliatory. See Love Aff. ¶ 5; [D.E. 20-11].

Walls remains a teacher at Hope Middle School. His primary job duties involve instructing

5

students. See Walls Dep. 41–42. Since his transfer, Walls's evaluations at Hope Middle School have been at or above proficiency. See id. 56.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 380 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The moving party bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, summary judgment is appropriate unless the nonmoving party can affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, inadmissable hearsay cannot create a genuine issue of material fact. See, e.g., Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . be []sufficient; there must be evidence on which the jury could reasonably find for [the nonmoving party]." Anderson, 477 U.S. at 252; see Evans, 80 F.3d at 958–59.

Initially, the court analyzes Walls's race discrimination claims under 42 U.S.C. § 1983 and Title VII. Public employees are protected from racial discrimination under the Equal Protection Clause of the Fourteenth Amendment and may seek relief under 42 U.S.C. § 1983. See, e.g., Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 566 (4th Cir. 2011). In order to prevail on

6

such a section 1983 claim, a plaintiff must prove that he was treated "differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Id. (quotation omitted). Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). A plaintiff may establish race discrimination under Title VII or section 1983 in two ways. See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 426–29 (E.D.N.C. 2012). First, a plaintiff may demonstrate through direct evidence that race discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 & n.4 (4th Cir. 2005); Evans, 80 F.3d at 959. Direct evidence is evidence from which no inference is required. To show illegal discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See Hill, 354 F.3d at 286–91. Such direct evidence would include a decisionmaker's statement that she disciplined a plaintiff due to his race. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000).

Second, if a plaintiff does not have any direct evidence of race discrimination, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. To do so in a discriminatory discipline case, a plaintiff must show that (1) he is a member of a protected class; (2) the prohibited conduct that he engaged in was comparable in seriousness to misconduct of an employee outside the protected class; and (3) the disciplinary measure (which must constitute adverse employment action) enforced against him was more severe than that enforced against a similarly situated employee outside the protected class. See, e.g., Taylor

7

v. Va. Union Univ., 193 F.3d 219, 234 (4th Cir. 1999) (en banc), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that it had a legitimate, non-discriminatory reason for the adverse employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–10 (1993); Burdine, 450 U.S. at 256; Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 603–04 (E.D.N.C. 2006).

Walls offers no direct evidence of race discrimination, and proceeds under McDonnell Douglas. See Walls Dep. 122–23, 136–37. Under McDonnell Douglas, Walls first must establish a prima facie case of race discrimination. The Board concedes that Walls belongs to a protected class, but disputes that Walls suffered any adverse employment action.

An adverse employment action must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quotation omitted); see Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 429–30 (4th Cir. 2015); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375–76 (4th Cir. 2004); Pledger v. UHS-Pruitt Corp., No. 5:12-CV-484-F, 2013 WL 1751373, at *6 n.10 (E.D.N.C. Apr. 23, 2013)

(unpublished); Corbett v. McHugh, No. 5:11-CV-742-BO, 2013 WL 312382, at *3 (E.D.N.C. Jan. 25, 2013) (unpublished); Gray v. Walmart Stores, Inc., No. 7:10-CV-171-BR, 2011 WL 4368415, at *2 (E.D.N.C. Sept. 19, 2011) (unpublished). Typical examples of adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255–56 (4th Cir. 1999); see Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc). Reassignment—and a corresponding change in working conditions—can constitute an adverse employment action, but only if it has a "significant detrimental effect" on the plaintiff. Boone, 178 F.3d at 256; see Adams, 789 F.3d at 429–30; Williams v. Brunswick Cty. Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010), aff'd, 440 F. App'x 169 (4th Cir. 2011) (per curiam) (unpublished).

Walls's race discrimination claim fails because his suspension with pay and benefits and his transfer to Hope Middle School with no reduction in pay or benefits do not constitute adverse employment action under Title VII or section 1983. See, e.g., Adams, 789 F.3d at 429–30; Peltier v. United States, 388 F.3d 984, 988 (6th Cir. 2004); Boone, 178 F.3d at 256; Williams, 725 F. Supp. 2d at 547. In opposition to this conclusion, Walls emphasizes trivial difference between his hours and duties at the Transition Center versus at Hope Middle School. See, e.g., Walls Dep. 31, 37, 41–42, 44, 46–48. These trivial differences, however, do not constitute "adverse employment action." See, e.g., Adams, 789 F.3d at 429–30; Boone, 178 F.3d at 256–57; Williams, 725 F. Supp. 2d at 547.

Alternatively, Walls has not raised a genuine issue of material fact concerning whether the alleged "discipline" enforced against him was more severe than that enforced against a similarly situated employee outside the protected class. Title VII and section 1983, however, require Walls to prove that he was similarly situated to a comparator outside the protected class who received less severe discipline from the same decsionmaker for essentially the same conduct. See, e.g., Taylor, 193 F.3d at 234; Cook, 988 F.2d at 511; Moore, 754 F.2d at 1105–06; see also Lightner v. City of

9

Wilmington, 545 F.3d 260, 265 (4th Cir. 2008); Crawford v. Ind. Harbor Belt R.R., 461 F.3d 844, 846–47 (7th Cir. 2006); Brasic v. Heinemann's Inc., 121 F.3d 281, 287 (7th Cir. 1997); Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *12 (E.D.N.C. Mar. 31, 2009) (unpublished), aff'd, 405 F. App'x 703 (4th Cir. 2010) (per curiam) (unpublished). Although Walls cites the lack of discipline imposed on Stella Dunn for the events of October 4, 2011, Dunn is not similarly situated to Walls. Notably, Dunn held a different position than Walls. See Walls Dep. 24–25, 33–34; Jackson Dep. 23. Moreover, Dunn was not at work on October 4, 2011, and Walls was supervising the two students at issue on October 4, 2011. Lutz Aff. ¶ 7; Walls Dep. 74, 149 & Ex. 6. Thus, Dunn is not a valid comparator. Likewise, Walls's vague references to three supposedly similar administrators who were not disciplined for other alleged misconduct does not create a genuine issue of material fact.

Alternatively, even if Walls could establish a prima facie case of race discrimination, his claim fails because the Board articulated a legitimate, non-discriminatory reason for suspending Walls with pay and benefits and transferring him, and Walls has not offered evidence from which a rational factfinder could find that the Board's proffered reason was a pretext designed to mask race discrimination. "A plaintiff can demonstrate pretext by showing that the alleged nondiscriminatory 'explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race-based] discrimination.'" Holley, 846 F. Supp. 2d at 428–29 (quoting Mereish, 359 F.3d at 336); O'Daniel v. United Hospice, No. 4:09-CV-72-D, 2010 WL 3835024, at *3–4 (E.D.N.C. Sept. 29, 2010) (unpublished). Walls has offered no such evidence. Indeed, he admitted that no Board employee ever mentioned his race in connection with his suspension with pay and benefits or his transfer to Hope Middle School. Accordingly, Walls's race-discrimination claim fails, and the court grants summary judgment to the Board on his race-discrimination claim under Title VII and section 1983.

Next, the court analyzes Walls's retaliation claims. The record contains no direct evidence

10

of retaliation. Instead, Walls relies on the McDonnell Douglas framework. See St. Mary's Honor Ctr., 509 U.S. at 506–07; Burdine, 450 U.S. at 252–56; Balas v. Huntington Ingall Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001); Holley, 846 F. Supp. 2d at 441–42. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took action against him that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas, 711 F.3d at 410; Holland, 487 F.3d at 218; Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003); see Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2524–33 (2013); Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67–70 (2006). An adverse employment action includes a "discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (quotation omitted) (alteration in original); see Burlington N. & Santa Fe Ry., 548 U.S. at 68–70.

Walls's retaliation claim fails because no rational juror could find that his suspension with pay and benefits and his transfer to Hope Middle School constitutes materially adverse employment action. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; Adams, 789 F.3d at 429–30; Holland, 487 F.3d at 218–19; Holley, 846 F. Supp. 2d at 441–44; Williams, 725 F. Supp. 2d at 547. In light of this conclusion, the court need not address the Board's alternative arguments that Walls did not engage in protected activity and that Walls has not shown a casual connection between his reassignment and alleged protected activity. Alternatively, even if Walls established a prima facie case, the Board articulated a legitimate, non-retaliatory rationale for its employment decisions and Walls has failed to raise a genuine issue of material fact concerning pretext. Accordingly, the court grants the Board's motion for summary judgment on Walls' retaliation claim under Title VII and section 1983.

11

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 39]. The clerk shall close the case.

SO ORDERED. This 19 day of August 2015.

JAMES C. DEVER III
Chief United States District Judge